IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MATTHEW WEBSTER,

              Plaintiff,

    v.

DOLLAR GENERAL, INC., BOB
MILLER, VINCE TRIBOLETTI, JOHN
DOES 1-20 (*hitherto unknown
employees or principals of
Dollar General, Inc.*), JANE DOES
1-20 (*hitherto unknown employees
or principals of Dollar General,
Inc.*), and ABC CORPORATIONS 1-10
(*hitherto unknown employees or
principals of Dollar General,
Inc.*),

              Defendants.

HONORABLE JEROME B. SIMANDLE

Civil Action No.
13-690 (JBS/KMW)


**OPINION**

APPEARANCES:

Randy P. Davenport, Esq.
LAW OFFICE OF RANDY P. DAVENPORT, ESQ.
The Imperial Building
1185 Morris Avenue, Suite 205
Union, NJ 07083
    Counsel for Plaintiff

Philip A. Goldstein, Esq.
MCGUIREWOODS LLP
1345 Avenue of the Americas, 7th Floor
New York, NY 10105
    -and-
Joel S. Allen, Esq.
Melissa M. Hensley, Esq.
MCGUIREWOODS LLP
2000 McKinney, Suite 1400
Dallas, TX 75201
    Counsel for Defendants

**SIMANDLE, Chief Judge:**

## I.   INTRODUCTION

In this employment action, Plaintiff Matthew Webster (hereinafter, "Plaintiff"), a practicing Seventh Day Adventist, alleges that Defendants Dollar General, Inc., Bob Miller, and Vince Triboletti (hereinafter, "Defendants" or "Dollar General") violated section 703(a) of the Civil Rights Act of 1964 (hereinafter, "Title VII") and breached the parties' express and implied agreements, by refusing to accommodate his religious obligations in connection with his proposed role as the Store Manager for the Sicklerville, New Jersey Dollar General.[1] Plaintiff takes issue, in particular, with Defendants' refusal to excuse him from working on the Saturday Sabbath of Seventh

---

[1] Plaintiff directs his Title VII claims against Dollar General, as well as two of its corporate officers, Bob Miller and Vince Triboletti (hereinafter, the "individual Defendants"). Nevertheless, Title VII only prohibits religious discrimination by an "employer," 42 U.S.C. § 2000e-2, and extant authority explains that Title VII creates no path for liability against an individual employee.  See, e.g., Emerson v. Thiel Coll., 296 F.3d 184, 190 (3d Cir. 2002) (explaining that "individual employees are not liable under Title VII"); Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1078 (3d Cir. 1996) (en banc) (same); Newsome v. Admin. Office of the Courts of the State of N.J., 51 F. App'x 76, 79 n.1 (finding summary judgment in favor of the individual defendants appropriate, because "it is settled that Title VII does not provide for individual liability").  As a result, summary judgment will be granted in favor of the individual Defendants on Plaintiff's Title VII claims.

Day Adventists, i.e., from sundown on Fridays to sundown on Saturdays.

Following pretrial discovery and post-discovery issues,[2] Defendants now move for summary judgment on the ground that the undisputed factual record demonstrates, as a matter of law, that they had no obligation to accommodate Plaintiff's religious observances, because doing so would have imposed, in their view, an undue burden on the operations of the Sicklerville store. (See generally Defs.' Br. at 6-27; Defs.' Reply at 3-14.)  More specifically, Defendants point to a laundry-list of potential

---

[2] In the midst of the parties' summary judgment briefing, the Court confronted Defendants' reliance upon "a diverse cross-section of their own employees, from a variety of locations (corporate, Sicklerville, and Bridgeton) and positions (regional managers, store managers, and associates," none of whom they previously identified "throughout the several years of pretrial factual discovery in this action." Webster v. Dollar Gen., Inc., 314 F.R.D. 367, 368 (D.N.J. 2016).  More specifically, Defendants looked to the factual declarations of eight individuals, in order to buttress their position that the accommodation requested here would have imposed an undue burden. Id. at 369.  Plaintiff, in turn, moved to exclude these "newly-minted witnesses" or, in the alternative, to reopen discovery for additional depositions.  Id. at 368, 370.  As a result of the prejudice of this previously undisclosed testimony, among other factors, the Court struck the declarations of Cheryl Sammons, Devon Nazar, and Courtney Kending (several Dollar General employees), see generally Webster v. Dollar Gen., Inc., 314 F.R.D. 367 (D.N.J. 2016), and then subsequently struck the factual declarations of Jeremy Hause and Amberlee Garrison on account of their unavailability for additional depositions. [See Docket Items 73 & 79.]  That development, in turn, fundamentally narrowed Defendants' evidence on the issue of undue burden, and the Court has, accordingly, disregarded large swatches of Defendants' statements of material fact (as well as any related exhibits).

ramifications, ranging from the deprivation of proper leadership and the improper delegation of managerial tasks, to inadequately stocked shelves and lower employee morale.[3]  (See generally id.) Turning then to the contractual aspects of this litigation, Defendants argue that Plaintiff's claims find no footing in any written employment contract (mostly, because no such contract exists), and rely instead only on his completed employment application.  (See generally Defs.' Br. at 27-30; Defs.' Reply at 14-15.)  As a result, Defendants submit that Plaintiff's contractual claims lack any basis in the undisputed evidence.[4] (See generally id.)

---

[3] In addition, Defendants move to strike the declaration Plaintiff produced in opposition to summary judgment on the grounds discussed below. [See Docket Item 83.]

[4] Beyond disputing the existence of any employment agreement, the individual Defendants take specific exception to their inclusion in Plaintiff's contract-based claims, because his Complaint only alleges "that he entered into a contract of employment with Dollar General," and not with them.  (Def.'s Br. at 29 (emphasis in original).)  It is well-settled that a contract, alleged or otherwise, "cannot bind a nonparty," EEOC v. Waffle House, Inc., 534 U.S. 279, 294 (2002); see also Advanced Acupuncture Clinic, Inc. v. Farmers Ins. Exchange, No. 07-5445, 2008 WL 4056291, at *4 (D.N.J. Aug. 26, 2008) ("It is well-settled law that, absent extraordinary circumstances, a contract only binds those who are parties to it."), and Plaintiff has demonstrated no fact (much less made any argument) to support any contractual claim against the individual Defendants.  (See generally Pl.'s Opp'n at 14-16 (arguing only that Dollar General breached the alleged agreement).)  As a result, summary judgment will be granted in favor of the individual Defendants on Plaintiff's contractual claims.

Plaintiff argues, by contrast, that the factual record dispels any definitive claim of undue burden, because the so-called "Saturday Duties" (that Plaintiff would have missed due to his religious observances) were delegable, and could have been referred to another employee without impacting overall operations.  (See Pl.'s Opp'n at 4-13.)  In support of this position, Plaintiff turns to the testimony of Dollar General's District Manager, Robert Miller, who "destroyed the notion," at least in Plaintiff's view, that the successful operation of a Dollar General location requires the Store Manager to work on Saturdays.  (Id. at 5-13.)  Indeed, Plaintiff claims that the testimony of Mr. Miller, by itself, creates a genuine dispute on the issue of undue burden.  (Id. at 13.)  Turning then to his contractual claims, Plaintiff argues that the "terms" of his employment application, particularly his expressed unavailability to work on Saturdays, governed the parties' employer-employee relationship.  (Id. at 14-16.)  From that premise, Plaintiff claims that Defendants' denial of an accommodation "clearly" amounts to a breach of the parties' express and implied agreements.  (Id.)

In resolving the pending motion, the Court must confront two interconnected inquiries.  First, the Court must consider whether the undisputed factual record demonstrates only one conclusion on the issue of undue burden.  Second, and relatedly,

the Court must address whether Plaintiff's employment application suffices, as a matter of law, to create a factual basis for Plaintiff's contractual claims.

For the reasons that follow, Defendants' motion for summary judgment will be granted in part and denied in part, and their motion to strike will be granted in part and denied in part.

## II. FACTUAL AND PROCEDURAL BACKGROUND[5]

### A. Dollar General, Generally

Dollar General, a retailer of basic "consumable goods, seasonal items, home products, and apparel," runs its various New Jersey locations through a team comprised of a Store Manager (hereinafter, an "SM"), an Assistant Store Manager (hereinafter, an "ASM"), one or more Lead Sales Associates (hereinafter, an "LSA"), and multiple Sales Associates. (Defs.' SMF at ¶¶ 1-4; Pl.'s RSMF at ¶¶ 1-4.) As relevant here, the SMs serve as the "highest supervisory" employee in any location, directly manage

---

[5] The Court distills this undisputed version of events from the parties' statements of material facts, affidavits, and exhibits, and recounts them in the manner most favorable to Plaintiff, as the party opposing summary judgment. The Court disregards, as it must, those portions of the parties' statements of material facts that lack citation to relevant record evidence (unless admitted by the opponent), recites factual irrelevancies, and/or recounts information that the Court struck from the summary judgment record. See generally L. CIV. R. 56.1(a); see also Kemly v. Werner Co., ___ F. Supp. 3d ____, 2015 WL 8335030 (D.N.J. Dec. 8, 2015) (disregarding portions of the parties' statements of material facts on these grounds); Jones v. Sanko Steamship Co., Ltd., ___ F. Supp. 3d ____, 2015 WL 8361745 (D.N.J. Dec. 8, 2015) (same).

the entire retail store (including its employees), and implement store processes (as necessary).  (Defs.' SMF at ¶¶ 3, 6; Pl.'s RSMF at ¶¶ 3, 6.)

In connection with these operations, each Dollar General location works "on a seven-day" cycle "that begins on 'Truck Day,'" or the day of the week on which "the truck delivers merchandise to the store."[6]  (Defs.' SMF at ¶ 10; Pl.'s RSMF at ¶ 10.)  The day of and after the delivery (i.e., "Truck Day" and "T+1"), in turn, become "important and busy" days for store operations, because the store staff must organize and stage the truck deliveries, and perform an array of stocking duties.[7] (Defs.' SMF at ¶¶ 14, 16-17; Pl.'s RSMF at ¶¶ 14, 16-17.)  Given the importance of these tasks, and SM's overarching responsibility for operations, Dollar General "'prefer[s]'" that SMs handle freight deliveries, and "'recommend[s]'" that they be present on "T+1" days to oversee shelving, among other end-of-

_____

[6] Dollar General refers to the day following "Truck Day" as "'T+1,'" the day after that as "'T+2,'" and so forth through "'T+6'" (i.e., the day before the "Truck Day" of the following week).  (Defs.' SMF at ¶ 11; Pl.'s RSMF at ¶ 11.)

[7] Plaintiff "[d]isagree[s]" with the characterization of "T+1" as an "important and busy day," but points to no evidence to buttress his disagreement.  (See Pl.'s RSMF at ¶ 14.)  Beyond that, Plaintiff alludes to the many "truck delivery and stocking duties" that occur on "T+1" in his own supplemental statement of material facts.  (Pl.'s Supp. SMF at ¶ 71.)  As a result, the Court finds no genuine dispute concerning the importance of "T+1" to the overall operation of a Dollar General store.

week tasks.[8]  (Pl.'s Supp. SMF at ¶ 70; see also Miller Dep. at 58:5-59:22; Defs.' SMF at ¶¶ 8-9 (explaining the "T+1" day responsibilities of the SM, all while acknowledging the delegable nature of those tasks, if necessary, to the ASMS); Defs.' Supp. SMF at ¶¶ 1-20 (reiterating the same general notion, coupled with some additional detail on the potential negative ramifications of the delegation).)

**B.   Plaintiff's Employment Application and Subsequent Employment**

On July 29, 2010, Plaintiff completed an employment application during a Dollar General Job Fair, in which he identified his work availability as from 6:00 A.M. to 6:00 P.M. Sundays through Thursdays, 6:00 A.M. and 6:00 P.M. on Fridays,

---

[8] The parties' positions diverge, dramatically, on the precise contours of the SMs duties on "Truck Day" and "T+1"—indeed that divergence provides the critical question on the pending motion. More specifically, Plaintiff takes the view that all of the "T+1" duties could have been delegated to an ASM, while Defendants advance the more rigid position that Dollar General expected and required its SMs to perform (or directly supervise) these functions.  (Compare Pl.'s Opp'n at 4-14 and Pl.'s Supp. SMF at ¶¶ 57-89, with Defs.' Br. at 6-26 and Defs.' Reply at 3-13.)  Nevertheless, the Court cannot, as detailed below, resolve this factual question in the face of genuinely competing evidence on summary judgment, because the parties' evidence contains support for both versions of the story.  Beyond that, for purposes of summary judgment, the Court must recount the factual background in the light most favorable to Plaintiff, and so the Court characterizes the SM's "T+1" duties as a preference, rather than a strict requirement.

and 6:00 P.M. to 11:00 P.M. on Saturdays.[9]  (Pl.'s Supp. SMF at
¶¶ 8-9; Defs.' RSMF at ¶¶ 8-9.)  Following interviews with
Dollar General District Manager Robert Miller, Store Manager
Dora Albert, and Regional Manager Tom Balchak, on August 12,
2010, Mr. Miller contacted Plaintiff to offer him the Store
Manager position for the then-unbuilt Sicklerville, New Jersey
location.  (Defs.' SMF at ¶¶ 26, 30; Pl.'s RSMF at ¶¶ 26, 30;
Pl.'s Supp. SMF at ¶¶ 10, 12-15; Defs.' RSMF at ¶¶ 10, 12-15.)
During the construction of the new location, however, Plaintiff
joined Dollar General as a "Store Manager Candidate"
(hereinafter, an "SMC"), a temporary position during which
Plaintiff would "train and gain experience" in another location,
until being "promoted to Store Manager and placed in his own
store."[10]  (Defs.' SMF at ¶¶ 19-20, 22; Pl.'s RSMF at ¶¶ 19-20,
22.)

---

[9] In other words, his employment application plainly disclosed
his lack of availability from 6:00 P.M. on Fridays through 6:00
P.M. on Saturdays, i.e., the period of his Saturday Sabbath.
[10] Plaintiff appears to "[d]isagree" with parts of Defendants'
description of the SMC position, but again points to no evidence
to buttress his disagreement, nor provides any explanation of
his actual issue.  (See Pl.'s RSMF at ¶¶ 21-23.)  Beyond that,
Plaintiff "[a]grees" with large portions of Defendants'
description.  (See id. at ¶¶ 19-20.)  As a result, the Court
finds no genuine and/or material dispute on the contours of the
SMC position.

## C.   Plaintiff's Training and Request for Accommodation

More specifically, in September of 2010, Plaintiff trained as an SMC at the Cherry Hill, New Jersey Dollar General under the supervision of SM Dora Albert.  (Defs.' SMF at ¶ 31; Pl.'s RSMF at ¶ 31; Pl.'s Supp. SMF at ¶¶ 18-20; Defs.' RSMF at ¶¶ 18-20.)  During that two-week period, Plaintiff worked the same schedule as Ms. Albert, including both Saturdays, and received a general (albeit lengthy) orientation into the requirements of the SM position.  (See Defs.' SMF at ¶¶ 31-32; Pl.'s RSMF at ¶¶ 31-32; Pl.'s Supp. SMF at ¶¶ 20, 23; Defs.' RSMF at ¶¶ 20, 23.)

At the conclusion of his training at the Cherry Hill store, however, Plaintiff explained to Ms. Albert that his beliefs as a Seventh Day Adventist left him "not available to work from sundown on Friday to sundown on Saturday."[11]  (Defs.' SMF at ¶ 33; see also Pl.'s RSMF at ¶ 33; Pl.'s Supp. SMF at ¶¶ 22, 24; Defs.' RSMF at ¶¶ 22.)  Ms. Albert then reported Plaintiff's "request for time off for religious observation" to Mr. Miller, who believed Plaintiff's "scheduling restrictions" on Saturdays constituted "an isolated event," rather than "an ongoing need."

_____

[11] The record, viewed through the recollection of Plaintiff, creates the impression that he may have informed Ms. Albert of his religious observances on multiple occasions throughout his two-week training.  (See, e.g., Pl.'s Supp. SMF at ¶¶ 21-24.)  Nevertheless, the precise timing proves immaterial, because Defendants admit that they learned of Plaintiff's lack of availability on Saturdays, at some point during his training.  (See Defs.' RSMF at ¶ 22.)

10

(Defs.' SMF at ¶¶ 34-35; <u>see also</u> Pl.'s RSMF at ¶¶ 34-35; Pl.'s Supp. SMF at ¶¶ 26, 28; Defs.' RSMF at ¶¶ 26, 28.) Nevertheless, in October 2010, Mr. Miller transferred Plaintiff to the Dollar General store in Berlin, New Jersey, to continue his SMC training under the direction of Store Manager Vincent Triboletti (<u>see</u> Defs.' SMF at ¶ 37; Pl.'s RSMF at ¶ 37; Pl.'s Supp. SMF at ¶ 33; Defs.' RSMF at ¶ 33), and instructed Plaintiff to contact Mr. Triboletti to arrange the logistics. (See Pl.'s Supp. SMF at ¶ 36; Defs.' RSMF at ¶ 36.)

When Plaintiff spoke with Mr. Triboletti, he informed him (as he did with Ms. Albert) that he could not work on any Saturday due to his observation of Saturday Sabbath. (See Defs.' SMF at ¶ 38; Pl.'s RSMF at ¶ 38; Pl.'s Supp. SMF at ¶ 37; Defs.' RSMF at ¶ 37.) Mr. Triboletti then relayed Plaintiff's scheduling limitations to Mr. Miller, who instructed Plaintiff (at the request of Human Resources) to draft a written statement "detailing his request for a religious accommodation." (Defs.' SMF at ¶¶ 39-40; Pl.'s RSMF at ¶¶ 39-40; Pl.'s Supp. SMF at ¶¶ 41-42; Defs.' RSMF at ¶¶ 41-42.) Plaintiff, in turn, wrote the following explanation and returned it to Mr. Miller:

> I Matthew Webster am a Seventh Day Adventist. This is
> my religion and my belief. I obey the Ten
> Commandments. The Sabbath is observed from sunset on
> Friday evening to sunset on Saturday evening. You can
> reference to Exodus 20, in which it states why we
> can't work on the Sabbath. I do understand the
> importance of this position as a Store Manager was

> offered to me by Dollar General. However, I do hope
> that Dollar General can exhaust all avenues if a[n]
> emergency occurs. My Sabbath is part of my faith. If
> a[n] emergency comes up, I hope that I would be
> considered the last option in the case of an
> emergency. Please keep in mind I am able to work
> Sunday to Friday.

(Ex. 7 to Goldstein Dec.)  In other words, Plaintiff requested a
permanent exemption from Saturday shifts, but expressed a
willingness to work Saturdays as a last resort in the event of
an "emergency."  (Id.)

Mr. Miller then considered Plaintiff's statement in
consultation with Dollar General's Field Employee Relations
Department (hereinafter, "FER"), and determined that Dollar
General could not accommodate the Saturday restriction for the
following reasons:

1.   The store would be left without a Store Manager
     available to handle staffing issues, employee
     questions, and emergency situations;

2.   It would have been unfair to the other key
     carriers (ASM and LSAs) who would work under
     Webster to make them work longer hours, force
     them to work extra shifts, or never allow them to
     have a Saturday off to cover for his absence;

3.   A Store Manager must always be available on
     certain days of the week, one of which is
     Saturday because that is the day payroll is
     submitted and weekly store reports are sent to
     the DM;

4.   During the holiday season, a 24-hour period of
     unavailability creates a significant scheduling
     issue because the Store Manager frequently needs
     to work more than usual or be on-call to work
     depending on customer and sales volume;

5.    A Store Manager needs to be available at all
times, regardless of the Store Manager's
schedule, in case they need to go into the store
due to high customer volume or an employee not
reporting to work;

6.    Dollar General could not offer an ongoing
substitute or swap with another Store Manager
because each Store Manager needs to be available
to work and respond to staffing needs and
emergencies at the Store Manager's own store;

7.    Saturday is almost always the busiest day of the
week at Dollar General stores, and the Store
Manager's presence is necessary for customer
service reasons and to control internal and
external theft;

8.    A SMC must be available to work some Saturdays to
gain experience working with high customer
volumes;

9.    It would be unfair to the other key carriers to
reassign a significant number of the Store
Manager's managerial tasks, requiring them to
regularly perform managerial tasks that are not
within the scope of their regular duties; and

10.   No lateral transfer was available that could
accommodate Plaintiff's request.

(Defs.' SMF at ¶ 45; see also Pl.'s RSMF at ¶ 45;[12] Ex. 9 to

Goldstein Dec. at ¶ 8.)  In light of these concerns, Mr. Miller

---

[12] Although Plaintiff "[d]isagree[s]" with the reasons
underpinning Defendants' no-accommodation position, he offers no
evidence to suggest that Defendants' decision rested upon any
other proffered factors.  (Pl.'s RSMF at ¶ 45.)  Rather, his
claimed factual disagreement with Defendants' statement appears
tethered to his disagreement, as a matter of law, to Defendants'
position on undue burden.  As a result, the Court finds no
genuine and/or material dispute on the proffered basis for
Defendants' no-accommodation decision.  That determination,
however, leaves unresolved the issue of whether these reasons

met with Plaintiff on November 1, 2010, and offered him two options: (1) "be available to work on Saturdays" or (2) "accept a different position ... which would allow for his scheduling needs to be accommodated." (Defs.' SMF at ¶ 47; see also Pl.'s RSMF at ¶ 47; Pl.'s Supp. SMF at ¶ 43; Defs.' RSMF at ¶ 43.) Plaintiff, however, refused either option, and so Dollar General terminated his employment on November 1, 2010. (See Defs.' SMF at ¶ 48; Pl.'s RSMF at ¶ 48; Pl.'s Supp. SMF at ¶¶ 44-45; Defs.' RSMF at ¶¶ 44-45.)

In the aftermath of his termination, Plaintiff filed a charge of religious discrimination with the Equal Employment Opportunity Commission (hereinafter, the "EEOC"), and received a "Right to Sue" letter on September 25, 2012. (Compl. at ¶ 20.) Defendants then removed Plaintiff's state court Complaint to this federal court, and the pending summary judgment motion followed.

## III. DEFENDANTS' MOTION TO STRIKE

Prior to considering the parties' substantive summary judgment positions, the Court addresses Defendants' objections to the factual declaration of Plaintiff.[13]   [See generally Docket

---

satisfy the standard for undue hardship under Title VII.  The Court address that question in section V.A., below.
[13] In addition, Defendants claim that Plaintiff "mischaracterized" and/or unfairly summarized certain aspects of the deposition testimony of Mr. Miller and Mr. Triboletti.  (See Defs.' Strike Br. at 14-19.)  Although a comparison of

Item 64.]  More specifically, in opposition to Defendants' bid
for summary judgment, Plaintiff submitted a thirty-two paragraph
declaration, in which he purports to retrace the circumstances
surrounding his accommodation request, and provides, in essence,
his take on Dollar General's ability to accommodate his Saturday
Sabbath.  (See generally Webster Dec.)  Defendants, in turn,
take exception with Plaintiff's declaration, on the grounds that
it provides little more than his unfounded speculation, and
recreates the circumstances leading up to Plaintiff's
termination through distortions of otherwise-clear deposition
testimony.  (See generally Defs.' Strike Br. at 3-14 (drawing
"the Court's attention to multiple [alleged] attempts by
Plaintiff to distort and contort the evidence to fit Plaintiff's
conceived narrative").)

      "Affidavits or declarations in support of or in opposition
to a motion for summary judgment must 'be made on personal
knowledge,' must 'affirmatively' indicate the affiant's
competence to testify to such matters, and must set forth facts

---

Plaintiff's recitation of the testimony with the actual
transcript creates the understandable impression that Plaintiff
relied upon narrow snippets (without the benefit of context),
the deposition transcripts ultimately speak for themselves.  As
a result, the Court has, in reviewing the present factual
record, reviewed and cited to the actual testimony rather than
the selective captions (or, characterizations) provided by
either party.  Against that backdrop, the Court need not
definitively resolve these narrow challenges.

that would be otherwise 'admissible in evidence.'" City Select Auto Sales, Inc. v. David/Randall Assocs., Inc., 96 F. Supp. 3d 403, 409 n.4 (D.N.J. 2015) (quoting FED. R. CIV. P. 56(c)(4); citing Leese v. Martin, No. 11-5091, 2013 WL 5476415, at *6 (D.N.J. Sept. 30, 2013)).  In other words, on summary judgment, the Court may credit a factual declaration "only to the extent [that it] constitutes evidence at least potentially admissible at trial," id. (citing Hurd v. Williams, 755 F.2d 306, 308 (3d Cir. 1985)), rather than speculation or "hearsay without any hope of being presented through 'direct testimony, i.e., in a form that would be admissible at trial.'"  Smart Vent, Inc. v. USA Floodair Vents, Ltd., No. 10-168, 2016 WL 3509325, at *14 (D.N.J. June 27, 2016) (internal quotation marks omitted) (citing Williams v. Borough of West Chester, 891 F.2d 458, 466 n.12 (3d Cir. 1989) (citation omitted) ("hearsay evidence produced in an affidavit opposing summary judgment may be considered if the out-of-court declarant could later present that evidence through direct testimony, i.e., 'in a form that would be admissible at trial'")).

In applying these principles here, the Court first considers Defendants' position that Plaintiff lacks personal knowledge for certain aspects of his declaration.  Plaintiff claims, for example,

1. that Dollar General managed each location "somewhat differently;"

2. that his "observance of Sabbath would not have negatively affected Dollar General's operations;"

3. that he could have easily completed the "T+1" or "T+2" duties within the prescribed "deadlines;"

4. that "[m]ost Store Managers did not work on Sundays;"

5. that he "would have been working far more hours on the peak days of Friday, Saturday and Sunday than most, if not all, Dollar General Managers;"

6. that he certainly "would have been able to perform all of the tasks required of a Store Manager within the range of hours normally expected of Dollar General Store Managers;" and

7. that Defendants "made up" excuses "to justify [his] illegal termination."

(Webster Dec. at ¶¶ 6, 12, 17, 18, 20, 29.)  In other words, Plaintiff delves into his perceptions of the operational structure of Dollar General stores, and offers legal conclusions concerning Defendants' motivation for his termination.  The Court recognizes that Plaintiff's brief two-month stint at Dollar General provided him with a limited spotlight into Defendants' affairs.  Nevertheless, the majority of his statements capture his own understandings, based upon his period of employment and training for the SM position, and Plaintiff has sufficient personal knowledge for these observations.[14]

---

[14] The basis for these assertions can, in turn, be explored through cross-examination, not through exclusion.

17

Beyond that, Plaintiff's statements appear rooted in comments made by SM Albert to Plaintiff, and are thus (as explained below) non-hearsay when offered by the party-opponent under Fed. R. Evid. 801(d)(2).[15]

The Court reaches a similar conclusion on the other challenged aspects of Plaintiff's declaration, which recount his understanding and knowledge of his Store Manager role, and/or capture out-of-court (or, hearsay) statements provable through direct testimony. Plaintiff explains, for example, the circumstances underpinning his employment with Dollar General, his potential plans as a Dollar General SM, and his scheduling flexibility despite his religious observances. (See id. at ¶¶ 8, 9, 14, 21-23, 25-27, 29.) In other words, Plaintiff provides classical, even if objectionable,[16] factual testimony made on personal knowledge.

Turning then to Plaintiff's inclusion of statements by out-of-court declarants, Plaintiff states that "Store Manager Dora Albert [said] that Store Manager[s] generally work for 4 hours

---

[15] The Court will, however, disregard Plaintiff's statement on the motivations behind his termination, because he proffers an improper legal conclusion. (See Webster Dec. at ¶ 29.)

[16] Defendants challenge Plaintiff's statements, in part, on the ground that his statements prove inconsistent with his "contemporaneous" remarks to Defendants. (See, e.g., Defs.' Strike Br. at 12-13.) Nevertheless, any inconsistency would be more appropriately drawn out through cross-examination at trial, not through exclusion of his arguably provable factual assertions on summary judgment.

on Saturday." (Id. at ¶ 13.)  In other words, Plaintiff clearly recites the out-of-court statement of Ms. Albert concerning the Saturday schedule of an SM, which is admissible against Dollar General as a statement of its authorized employee or agent within Fed. R. Evid. 801(d)(2)(C) & (D). (See id.) Furthermore, and in the alternative, because Ms. Albert will inevitably testify to the content of her statements to Plaintiff, the statement satisfies the potentially-admissible standard, and need not be stricken. See Davis v. City of E. Orange, No. 05-3720, 2008 WL 4328218, at *9 n.19 (D.N.J. Sept. 17, 2008) (citations omitted) (declining to disregard hearsay aspects of a declaration because the out-of-court declarant would later present the evidence through direct testimony); compare Smart Vent, Inc., 2016 WL 3509325, at *15 (disregarding aspects of certain declarations as "unprovable hearsay" when original declarant's identity is unknown and intermediate declarant is unavailable as witness).

      With those prefatory conclusions, the Court turns to the parties' substantive positions on summary judgment.

## IV. STANDARD OF REVIEW APPLICABLE TO DEFENDANTS' SUMMARY JUDGMENT MOTION

      Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Alabama v. North Carolina, 560

19

U.S. 330, 344 (2010) (citations and internal quotation marks omitted); see also FED. R. CIV. P. 56(a).

In evaluating a motion for summary judgment, the Court must view the material facts in the light most favorable to the non-moving party, and make every reasonable inference in that party's favor.  See Scott v. Harris, 550 U.S. 372, 378 (2007); Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014).  An inference based upon "'speculation or conjecture,'" however, "'does not create a material factual dispute sufficient to defeat summary judgment.'"  Halsey, 750 F.3d at 287 (citations omitted).  Rather, the non-moving party must support each essential element with concrete record evidence.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," the Court may grant summary judgment.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**V. DISCUSSION**

    **A.   Religious Discrimination Claim under Title VII**

        **1.   Religious Accommodation, Generally**

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion."  42 U.S.C. § 2000e-2(a)(1).  The

20

statutory definition of "religion," in turn, includes "all aspects of religious observance and practice, as well as belief, <u>unless</u> an employer demonstrates that [it] is unable to reasonably accommodate ... an employee's or prospective employee's religious observance or practice <u>without undue hardship</u> on the conduct of the employer's business."  42 U.S.C. § 2000e(j) (emphases added).  Stated differently, an employer has a "statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship."  <u>Trans World Airlines, Inc. v. Hardison</u>, 432 U.S. 63, 75 (1977).

Against that statutory backdrop, a prima facie case of religious discrimination requires evidence (1) that the plaintiff had a sincere religious belief that conflicts with a job requirement, and (2) that the need for an religious-based accommodation motivated the employer's adverse employment decision.  <u>See</u> <u>E.E.O.C. v. Abercrombie & Fitch Stores, Inc.</u>, 135 S. Ct. 2028, 2032 (2015); <u>Webb v. City of Phila.</u>, 562 F.3d 256, 259 (3rd Cir. 2009).  If the plaintiff meets those prima facie requirements, the burden then shifts to the defendant-employer to show that "it made good faith efforts to accommodate, <u>or</u> that the requested accommodation would work an undue hardship." <u>Shelton v. Univ. of Med. & Dentistry of N.J.</u>, 223 F.3d 220, 224

(3d Cir. 2000) (emphasis added) (citations and internal quotation marks omitted).

In this case, Defendants assume satisfaction of the prima facie requirements (for purposes of the pending motion), and turn their attention instead to the issue of undue burden or hardship. (See, e.g., Defs.' Br at 6.)  The analysis on Plaintiff's Title VII religious discrimination claim therefore collapses to "whether [Defendants] can show [that a] reasonable accommodation would work an undue hardship."  Webb, 562 F.3d at 259.  In evaluating undue hardship, binding case law explains that an accommodation "constitutes an 'undue hardship' if it would impose more than a de minimis cost on the employer."  Id. at 260.  Aside from that standard, the applicable law provides little, if any, "precision [on] the meaning of 'undue hardship' under Title VII," and directs district courts to "focus on the specific [factual] context of each case," with an eye towards "the magnitude of the alleged undue hardship."  Id.; see also Protos v. Volkswagen of Am., Inc., 797 F.2d 129, 134 (3d Cir. 1986) (explaining that the "determination [of] 'whether a particular accommodation works an undue hardship on either an employer or union must be made by considering 'the particular factual context of each case'").

> **2.  Factual Disputes Preclude the Entry of Summary Judgment on Plaintiff's Title VII Claim against Dollar General**

In applying this framework here, the Court finds Defendants' position on undue burden initially appealing, because they point, exhaustively, to the arguable practical effects of an SM's absence on Saturdays (i.e., the proposed "T+1" day for the Sicklerville location).  Indeed, Defendants make creditable arguments concerning the unfairness of the seemingly perpetual delegation of Saturday SM duties, the potential for inventory-related issues, and the possibility of sales and budgetary shortfalls.  (See, e.g., Defs.' Br. at 4-27; Defs.' Supp. Statement.)  These assertions, in turn, provide strong evidence in Defendants' favor on the issue of undue burden, particularly when viewed through the prism of the Third Circuit's recognition "'that the undue hardship test [may not be] a difficult threshold to pass.'"  Webb, 562 F.2d at 260 (citation omitted).

In the context of summary judgment, however, this Court provides Plaintiff, as it must, with the benefit of all reasonable favorable inferences.  Here, Plaintiff claims that the testimony of Mr. Miller creates, at a minimum, a factual issue on the question of undue burden, and this Court agrees. Indeed, Mr. Miller explained, in plain terms, that Dollar General "prefer[s]" or "recommend[s]," but does not require, the

SM to be present on "T+1" days.  (Miller Dep. at 58:14-59:1.)
Mr. Miller then went on to explain that Dollar General
"preferred" that SMs perform certain tasks, and "preferred" that
these responsibilities not be delegated to an ASM, but again,
specifically couched his comments in terms of a
"recommend[ation]."  (Id. at 62:13-19, 64:2-65:10.)  Indeed, Mr.
Miller explained that Dollar General has no prohibition against
delegation, no requirement that SMs work on Saturdays, nor any
strict rule that only an SM can perform certain tasks.  (See
id.; see also id. at 73:15-19.)  Rather, he expressed himself
only in terms of preferences and recommendations.  (See
generally Miller Dep.)  Against that backdrop, the determination
of whether a laundry-list of preferences qualifies as an undue
burden rests with the jury, not this Court on summary judgment.[17]

Beyond that, the Court must recognize that Dollar General
hired Plaintiff for the then-unbuilt Sicklerville location, and
Defendants have not demonstrated, without genuine dispute, that
Dollar General employs a strictly one-size-fits-all approach to

---

[17] The case law on the issue of undue burden falls far short of
requiring an employer to provide every possible religious
accommodation, and considers instead only whether the
accommodation imposes more than a *de minimis* cost—a circumstance
that Defendants well-highlight in their reply briefing.  That
fact-intensive inquiry, however, still conceives of a spectrum,
and this Court cannot, on the competing evidence presented here,
determine as a matter of law where this action falls on that
factual spectrum.

the scheduling of its "Truck Day," among other issues.  To the contrary, the factual record creates at least a genuine dispute of fact on whether the operations (or, schedule) of a particular store could have been molded to the limitations of its highest-ranking staff person, the SM.  That potential flexibility might, in turn, render an incidental burden *de minimis*; Plaintiff's ability to work after 6:00 PM on Saturdays may also help to alleviate the burden of a Saturday scheduling accommodation.[18] That factual issue too, though, must be left to the jury, not this Court on summary judgment.[19]

For all of these reasons, the Court finds that factual disputes preclude the entry of summary judgment in Dollar General's favor on Plaintiff's Title VII claim.  See FED. R. CIV. P. 56(a).[20]

---

[18] On this issue, the Court must also note the reasonable factual inferences that flow from Plaintiff's own perceptions of the Store Manager role, and potentially-feasible accommodations. (See generally Webster Dec.)

[19] Finally, the Court must reiterate that the striking of many of Defendants' declarations fundamentally altered the complexion of the summary judgment submissions, and although their supplemental submission restored part of the evidentiary loss, the factual record on the issue of undue burden remains far from undisputed.

[20]  The Court will however, as explained above, enter summary judgment in favor of the individual Defendants on Plaintiff's Title VII claim.  With that, John Does 1-20, Jane Does 1-20, and ABC Corporations 1-20, constitute the only remaining Title VII Defendants.  Despite the lengthy discovery period in this action, however, Plaintiff has not named any of these fictitious defendants, nor effectuated service, and the time to perform

**B.   Contractual Claims**

Plaintiff's contractual claims rest, as explained above, entirely on the notion that Plaintiff's employment application created a contractual relationship between the parties, despite New Jersey's presumption of at-will employment.  (See generally Pl.'s Opp'n at 14-16.)   Nevertheless, the factual record falls far short of meeting the essential prima facie requirements.

In order to succeed on a breach of contract claim under New Jersey law, a plaintiff must show that (1) a valid contract existed, (2) that the defendant failed to perform under the contract, and (3) that failure to perform caused injury to plaintiff.  See Gutwirth v. Woodford Cedar Run Wildlife Refuge, 38 F. Supp. 3d 485, 491 (D.N.J. 2014) (citing Red Roof Franchising, LLC v. Patel, 877 F. Supp. 2d 124, 131 (D.N.J. 2012)).  A valid contract, in turn, requires "mutual assent, consideration, legality of the object of the contract, capacity of the parties, and formulation of memorialization."  Id. (citing D'Agostino v. Appliances Buy Phone, Inc., No. 10-05415, 2011 WL 4345674, at *6 (D.N.J. Sept. 15, 2011)).

Turning to the relevant factual record here, Plaintiff provides no support for the notion that his seemingly unsigned employment application creates a valid contract, much less any

---

either task has long since expired.  As a result, the Court will exercise its discretion to dismiss these fictitious defendants.

evidence to substantiate his position that Defendants <u>agreed</u> to his Saturday limitations.  Indeed, he points to no provision of the employment application, nor even attaches it to his summary judgment submissions.

Rather, Plaintiff points, more nebulously, to his unilateral completion of an employment application, but no actual evidence to establish the arguable formation of a valid contract.  From that premise, he states, without explanation or citation, that "Defendants accepted [Plaintiff's] written offer of employment subject to his hours of availability," and thus became "bound to the terms of the agreement."  (Pl.'s Opp'n at 16.)  Aside from these bare assertions, he provides no factual or legal support for the notion that an employment application constitutes an "offer" of a contract, nor that subsequent employment somehow works as an "acceptance" of that offer.  In other words, Plaintiff's claim rests upon unsupported assertions, which plainly fail to meet his prima facie burden.

As a result, the Court finds the entry of summary judgment in favor of Defendant appropriate on Plaintiff's contractual claims.[21]  <u>See</u> FED. R. CIV. P. 56(a).

---

[21] Because the Court concludes that the employment application does not, on this record, create a valid contract, there can be no implied covenant of good faith and fair dealing (and, accordingly, no breach of that implied covenant).  <u>See</u> <u>Schlichtig v. Inacom Corp.</u>, 271 F. Supp. 2d 597, 606-07 (D.N.J. 2003) (granting summary judgment on a claim for breach of the

## VI.  CONCLUSION

For the reasons explained above, Defendants' summary judgment motion will be granted in part and denied in part, and their motion to strike will be granted in part and denied in part.  The sole remaining claim for trial is thus Plaintiff's claim of religious discrimination in employment by Defendant Dollar General in violation of Title VII, all other claims and all individual defendants having been dismissed.  An accompanying Order will be entered.


___July 14, 2016___                   ___s/ Jerome B. Simandle___
Date                                  JEROME B. SIMANDLE
                                      Chief U.S. District Judge




_____

duty of good faith and fair dealing); Barone v. Leukemia Society of Am., 42 F. Supp. 2d 452, 457 (D.N.J. 1998) ("In the absence of a contract, there is no implied covenant of good faith and fair dealing which might be used as a basis for finding a right to continued employment.").  On that issue, the Court finds Plaintiff's reliance upon Nolan v. Control Data Corp., 579 A.2d 1252, 1257 (App. Div. 1990) misplaced, because it plainly explains that the "implied covenant of good faith and fair dealing" applies only "to those aspects of the employer-employee relationship which are governed by some contractual terms," and not in the absence of a contract (as here).  Id.  As a result, the Court finds summary judgment on Plaintiff's related claim for breach of these implied duties appropriate, as well.